UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT EUGENE CHERWINK,<br>　　　　Plaintiff,<br>　　v.<br>COMMISSIONER OF SOCIAL SECURITY,<br>　　　　Defendant. | Case No.17-cv-00082-JSC<br><br>**ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 17, 22 |

Plaintiff Robert Eugene Cherwink seeks social security benefits for anxiety disorder, depression disorder, alcoholism, disc injuries, arthritis, TMJ, chronic pain syndrome, and hypertension. (Administrative Record ("AR") 189.) Plaintiff previously appealed the denial of his claim for benefits to this court and the court remanded to the Agency concluding that the Administrative Law Judge's ("ALJ") finding that Plaintiff's job skills were transferable was not supported by substantial evidence. *See Cherwink v. Colvin*, No. 13-CV-05147-JCS, 2014 WL 6969658, at *17 (N.D. Cal. Dec. 8, 2014). On remand, the Administrative Law Judge ("ALJ") again found Plaintiff not disabled and this appeal followed. The parties' cross-motions for summary judgment are now pending before the Court.[1] (Dkt. Nos. 17 & 22.) Because the ALJ's decision was supported by substantial evidence, the Court DENIES Plaintiff's motion and GRANTS Defendant's cross-motion.

---

[1] Both parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). (Dkt. Nos. 7 & 10.)

## LEGAL STANDARD

A claimant is considered "disabled" under the Social Security Act if he meets two requirements. *See* 42 U.S.C. § 423(d); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). First, the claimant must demonstrate "an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Second, the impairment or impairments must be severe enough that he is unable to do his previous work and cannot, based on his age, education, and work experience "engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). To determine whether a claimant is disabled, an ALJ is required to employ a five-step sequential analysis, examining: (1) whether the claimant is "doing substantial gainful activity"; (2) whether the claimant has a "severe medically determinable physical or mental impairment" or combination of impairments that has lasted for more than 12 months; (3) whether the impairment "meets or equals" one of the listings in the regulations; (4) whether, given the claimant's "residual functional capacity," the claimant can still do his "past relevant work"; and (5) whether the claimant "can make an adjustment to other work." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012); *see* 20 C.F.R. §§ 404.1520(a), 416.920(a).

## PROCEDURAL HISTORY

The court's prior decision set forth the factual and procedural background at length and the Court incorporates it by reference. *See Cherwink*, 2014 WL 6969658, at *1-*6. In the earlier decision, the court held that substantial evidence supported the ALJ's determination that Plaintiff could perform light work and that the light work GRID rules thus applied. *Id.* at *12. However, because Plaintiff should have been considered of "advanced age" instead of "approaching advanced age," the issue of the transferability of Plaintiff's skills from his past relevant work as a graphic designer was material to the disability finding. *Id*. at *14-15. But neither the ALJ decision nor the VE testimony provided a sufficient basis to conclude that Plaintiff had transferable job skills. *Id*. at *16-17. As such, the court remanded the matter to the Agency to determine whether the skills Plaintiff acquired from his past work were transferable to the skilled

or semiskilled jobs available to him in the national economy. *Id*. at *17. This Order only addresses what followed that remand.

On January 28, 2015, the Appeals Council vacated the ALJ's prior decision and remanded the case to the ALJ. (AR 746.) Just over six months later, a further hearing was held before ALJ K. Kwon in San Rafael, California, during which both Plaintiff and a vocational expert ("VE") Stephen P. Davis testified. (AR 565.) The ALJ heard testimony regarding: (1) the transferability of Plaintiff's job skills from this past relevant work and (2) any ongoing issues with substance abuse as part of the drug addiction and alcoholism (DAA) analysis.

**A. The ALJ's Findings**

On December 21, 2015, the ALJ issued a written decision denying Plaintiff's application and finding that Plaintiff was not disabled within the meaning of the Social Security Act and its regulations taking into consideration the testimony and evidence, and using the SSA's five-step sequential evaluation process for determining disability. (AR 565-74.); *see* 20 C.F.R. §§ 404.1520(g).

At step one, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since September 1, 2009, the alleged onset date. (AR 567); *see* 20 C.F.R. §§ 404.1571 *et seq.*, 416.971 *et seq*.

At step two, the ALJ determined that the objective medical evidence indicated that Plaintiff's degenerative disc disease of the lumbar spine, depressive disorder, anxiety disorder, and alcohol abuse, in sustained remission, constitute "severe impairments" within the meaning of the regulations. (AR 567); *see* 20 C.F.R. §, 416.920(c).

At the third step, the ALJ concluded that Plaintiff did not have an impairment or a combination of impairments that meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 568.) At this step, the ALJ considered whether Plaintiff's mental impairments met the listing of Sections 12.04, 12.06 or 12.09, paragraphs (B) and (C). (*Id*.) With regards to paragraph (B), he concluded that they did not, on the grounds that Plaintiff's mental impairments do not cause (1) at least two "marked" limitations, where a marked limitation means more than moderate but less than extreme, or (2) one

3

"marked" limitation and "repeated" episodes of decompensation, each of extended duration, which means three episodes within one year, or an average of once every four months, each lasting for at least two weeks. (*Id*.) The ALJ also concluded that no paragraph C criteria were present. (*Id*.)

The ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. 404.1567(b) except that he is limited to work no greater than Specific Vocational Preparation ("SVP") 4 level. (AR 569.) To reach this conclusion, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms [we]re not entirely credible." (*Id*.) The ALJ noted that despite Plaintiff's impairment, "he has engaged in a somewhat normal level of daily activity and interaction" and that "[s]ome of the physical and mental abilities and social interactions required in order to perform these activities are the same as those necessary for obtaining and maintaining employment" which "undermined the credibility of claimant's allegations of disabling functional limitations." (*Id*.) The ALJ also noted Plaintiff's "noncompliance and refusal to follow medical advice" as well as his "routine and/or conservative" treatment. (AR 569-70.) As far as the medical opinion evidence, the ALJ gave "some" weight to the opinion of Plaintiff's treating psychologist Dr. Sands to the extent it was consistent with the record as a whole, but rejected Dr. Sand's opinion that Plaintiff was not capable of working because the final determination regarding whether an individual is disabled is reserved for the Commissioner. (AR 571.) The ALJ gave great weight to the opinion of treating specialist Dr. Anne Kopp because her opinion was consistent with Plaintiff's reports, the information reviewed, and her observations. (AR 572.) The ALJ gave little weight to examining physician Dr. Taylor's opinion because it was limited in scope, failed to say what impairment limited Plaintiff's ability to work, and was inconsistent with the record as a whole. (*Id*.)

At step four, the ALJ found that Plaintiff was not capable of performing his past relevant work as a graphic designer which is performed at the medium level with an SVP of 7 because it exceeded his residual functional capacity. (AR 573.)

4

At step five, the ALJ found that although Plaintiff is in the advanced age category, the work skills he obtained from his past relevant work were transferable to other occupations with jobs existing in significant numbers in the national economy that could be performed at the SVP 4 or less level. (*Id*.)

**B. Appeals Council**

Plaintiff filed a request for review arguing that the ALJ committed errors of law and that his decision was not supported by substantial evidence. (AR 555.) On November 15, 2016, the Appeals Council considered Plaintiff's request for review and denied review, making the ALJ's decision final. (*Id*.)

**C. This Action**

Plaintiff commenced this action for judicial review on January 7, 2017 pursuant to 42 U.S.C. §§ 405(g). (Dkt. No. 1.) Both parties thereafter consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). (Dkt. Nos. 6 & 10.) Plaintiff then filed his motion for summary judgment and the Commissioner filed her cross-motion. (Dkt. Nos. 17 & 22.)

**DISCUSSION**

Plaintiff challenges only one aspect of the ALJ's decision: the ALJ's transferability of skills analysis at Step Five.

**A. The ALJ's Step Five Finding**

At Step Five, "the Commissioner has the burden to identify specific jobs existing in substantial numbers in the national economy that [a] claimant can perform despite [his] identified limitations." *Zavalin v. Colvin*, 778 F.3d 842, 845 (9th Cir. 2015) (internal citation and quotation marks omitted). "In making this determination, the ALJ relies on the DOT, which is the SSA's primary source of reliable job information regarding jobs that exist in the national economy" as well as "the testimony of vocational experts who testify about specific occupations that a claimant can perform in light of his residual functional capacity." *Id*. at 845-46 (internal citation and quotation marks omitted). If there is a "conflict between the vocational expert's testimony and the DOT—for example, expert testimony that a claimant can perform an occupation involving

5

DOT requirements that appear more than the claimant can handle—the ALJ is required to reconcile the inconsistency." *Massachi v. Astrue*, 486 F.3d 1149, 1153–54 (9th Cir. 2007). Neither the DOT nor vocational expert testimony trumps the other when there is a conflict. *Id.* at 1153 (quoting SSR 00–4p at *2). As the final step in this analysis, the ALJ determines "whether, given the claimant's [residual functional capacity], age, education, and work experience, he actually can find some work in the national economy." *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009); *see also* 20 C.F.R. § 416.920(g).

Here, the ALJ found that while Plaintiff's limitations did not allow him to perform the full range of light work, considering his age, education, and transferable work skills, a finding of "not disabled" was appropriate. (AR 574.) The ALJ based his determination on the testimony of the vocational expert.

**1) Legal Framework for the Transferability of Skills Analysis**

The Social Security Regulations state that a claimant's skills are transferable "when the skilled or semi-skilled work activities [the claimant] did in the past work can be used to meet the requirements of skilled or semi-skilled work activities of other jobs." *Renner v. Heckler*, 786 F.2d 1421, 1423 (9th Cir. 1986). Where, as here, the claimant is 55 years of age or older, "[i]n order to find transferability of skills to skilled sedentary work ... there must be very little, if any, vocational adjustment required in terms of tools, work processes, work settings, or the industry." 20 C.F.R. pt. 404, Subpt P, App. 2, § 200.00(f); *see also* 20 C.F.R. § 404.1568(d)(4); *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1224 (9th Cir. 2009). The ALJ's findings as to vocational adjustment must be supported by substantial evidence. *See Renner*, 786 F.2d at 1424 (reversing and remanding where the record was silent as to the amount of vocational adjustment required for the claimant to transfer into the new positions).

Transferability "depends largely on the similarity of occupationally significant work activities among different jobs." 20 C.F.R. § 404.1568(d)(1). Skills will be considered transferable "when the skilled or semi-skilled work activities you did in past work can be used to meet the requirements of skilled or semi-skilled work activities of other jobs...." *Id*. A finding of transferability is most probable among jobs that involve: (1) the same or lesser degree of skill; (2)

6

a similarity of tools; and (3) a similarity of services or products. *Id*. § 404.1568(d)(2). Complete similarity of skills, however, is not necessary. *Id*. § 404.1568(d)(3). Generally, the vocational expert provides testimony concerning these factors, comparing the required skills, reasoning level, and training for the jobs as identified in the DOT. The ALJ may rely on the VE's testimony concerning these factors without making express findings concerning each factor. *See Engel v. Colvin*, No. SACV 14-01989-JEM, 2015 WL 6453081, at *5 (C.D. Cal. Oct. 23, 2015), judgment entered, No. SACV 14-01989-JEM, 2015 WL 6453082 (C.D. Cal. Oct. 23, 2015); *Nunez v. Colvin*, 2014 W L 4702508, at *5 (C.D. Cal. Sep. 22, 2014). However, "[i]f the ALJ finds that the claimant possesses transferrable skills, he "is required to make certain findings of fact and include them in the written decision. Findings should be supported with appropriate documentation." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1223 (9th Cir. 2009)(ALJ transferability decision reversed for failing to make the findings required by SSR 82-41); *Renner v. Heckler*, 786 F.2d 1421, 1423 (9th Cir. 1986) (ALJ transferability decision reversed because no finding on the amount of vocational adjustment required).

**2) The VE Testimony and ALJ Decision Regarding Transferability**

Plaintiff testified that he worked for a public relations firm as a graphic designer and creative director. (AR 602.) His primary responsibility was to "design illustrative material for the purpose of sales and quality control." (AR 609.) He described his past work as "in design, graphic design and production of events. And I put together the programs, the internet campaign, printed materials…Pretty much all on the computer." (AR 601.) He used computer programs like Adobe Photoshop, InDesign, and internet applications like Dreamweaver for creating websites. (AR 603.) The VE found that this past work was best classified as a graphic designer (DOT 141.061.018), which has a SVP of 7. (AR 610.) An SVP of 7 qualifies it as a skilled position. *See* Social Security Ruling ("SSR") 00-4p, 2000 WL 1898704, *3. However, because Plaintiff was of advanced age, and according to the ALJ, was limited to light work at no more than a SVP 4 level, his skills had to be transferable to skilled or semiskilled light work. 20 C.F.R. § 404.1568(d)(4).

The VE found that the following positions would be transferable with minimal if any vocational adjustment: (1) production proofreader (DOT 247.667-100), and (2) basic proofreader (DOT 219.687-010); both of which have an SVP of 4. (AR 613.) The VE concluded that Plaintiff's visual proofreading skills, understanding of the artistic nature of print and graphics, and knowledge of computers were directly transferable to these positions. (AR 614-15.) He based this on Plaintiff's testimony that "he was involved in the creative process in terms of reviewing documents and making revisions and that the final product was basically his design...he was doing a lot of observation of information and it could be visual, it could be typewritten, and that it's his responsibility to inspect that very carefully." (AR 614.) Plaintiff qualified that the copyediting was performed by others, but that he was in charge of how it looked on the page. (AR 616.) The ALJ followed-up asking:

> Q: Okay, But you're in charge of the way it looks?
> A: Right.
> Q: The graphics.
> A: Exactly.
> …
> Q: Because you're the one as the creative director, you're presenting, like this is – obviously there's several people involved, but you're presenting it. This is the finished product that we propose you, you know, spend your money, budget, to run."
> A: Correct, yes.
> …
> Q: Okay, and so you are in charge at the end of the day of the look and feel of the whole thing?"
> A: Mmmhmm. Yes, that's—

(AR 616-18.) The ALJ then asked the VE if this changed his opinion regarding the transferability of skills for the proofreading position and the VE testified that it did not because "any time you're in the creative process, you're involved in some type of copyediting or proofreading." (AR 618.) The VE noted that there was no direct match with the work fields in the DOT listings for these positions, but concluded that "even though it differs in our coding system that it would fall under a rubric of a skill set that a creative designer would have." (AT 624-25.) The ALJ followed up asking whether the proofreading job would involve adjustment and the VE responded: "I don't believe proofreading would be a – would be an adjustment at all." (AR 625.)

The VE also asked Plaintiff "if he had any experience transferring information from photographic negatives and things of that nature onto the –to create an artistic design." (AR 618.) Plaintiff confirmed that he had done some photo editing and the VE then offered additional jobs with transferable job skills. (AR 618.) In particular, a blocker II (DOT 971.684-010) and electrotype servicer (DOT 659.462-010). (AR 619.) The VE identified the transferable skills for the electrotype servicer as dealing with a variety of different in-person customers and making sure the finished process met specifications. (*Id.*) The VE did not believe there would be any substantial adjustment for the electrotype servicer. (AR 620.) However, the blocker II would require some adjustment because while it is the same field—design—it's a "different industry" "using photographic equipment and transferring it over to another venue where it could be used to create creative material." (AR 620.)

In the ALJ's written decision, he "accept[ed] and adopt[ed] the VE's testimony with respect to Plaintiff's ability to perform the proofreader positions "'readily' with little vocational adjustment." (AR 574.) The ALJ also noted that "[a]t a later point in the hearing, the vocational expert identified an additional position with little to no vocational adjustment." (*Id.*) This is presumably the electrotype servicer position as the ALJ's decision does not reference the blocker II position.

**3) Plaintiff's Challenge to the Transferability Analysis**

Plaintiff's sole challenge to the ALJ's transferability analysis is that "the ALJ's determination that [Plaintiff] has readily transferrable skills is contrary to the administratively noticed data and reason." (Dkt. No. 17 at 21:16-18.) In particular, Plaintiff argues that the ALJ erred in determining that his graphic designer skills were transferable to other positions such as proofreader and electrotype servicer because the "work field" and Material, Products, Subject Matter, and Services ("MPSMS") codes for those other positions are in different fields with different work purposes defined. (*Id.* at 13:4-6.) Plaintiff also insists that the VE should have consulted the "Revised Handbook for Analyzing Jobs, US Dept. of Labor, (1991) (RHAJ)" for determining the relevant work tasks/work fields. (*Id.* at 15:21-24.) Plaintiff maintains that "the DOT and its related publications do not support the vocational advisors' testimony" and

9

"[c]omparing the work task/field of the graphics design, neither the production proofreader, basic proofreader nor electrotyper servicer share the same or a similar work field." (Dkt. No. 24 at 5:22-25.)

Plaintiff does not cite any legal authority for his arguments regarding the MPSMS and the Department of Labor handbook. The only cases the Court has been able to identify considering these issues have routinely rejected Plaintiff's arguments. As another court has explained:

> The only legal authority that this Court could find that referred to the MPSMS was an unpublished Ninth Circuit memorandum decision that rejected the plaintiff's argument as "non-persuasive" that "her skills are not transferable because the alternate work positions suggested by the ALJ are not found under the same work file number or Material, Products, Subject Matter, and Services number as her prior position of Shipping and Receiving Clerk in the Dictionary of Occupational Titles." *See Thompson v. Barnhart*, 148 Fed.Appx. 634, 635 (9th Cir. 2005). No other Ninth Circuit or district court case relies upon, or even cites, Plaintiff's purported "only responsible methodology" theory.

*Garcia v. Astrue*, No. 1:11-cv-00774-SKO, 2012 WL 4091847, at *7 (E.D. Cal. Sept. 17, 2012); *see also Russell v. Berryhill*, No. 17-CV-00065-SVK, 2017 WL 4472630, at *11 (N.D. Cal. Oct. 6, 2017) (rejecting argument that use of specific vocational preparation, work fields, and "Material, Products, Subject Matter, and Services" codes are "the only acceptable methodology" as unsupported by any legal authority); *Hartley v. Colvin*, No. 2:13-cv-1863 AC, 2014 WL 6058652, *6, 2014 U.S. Dist. LEXIS 159309, *17 (E.D. Cal. Nov. 12, 2014) ("plaintiff's contention that the vocational expert must rely on matching work fields and MPSMS codes when analyzing transferability is unsupported by any legal authority. In fact, the regulations specify that a complete similarity of degree of skill, tools and machinery used, and raw materials, products, processes or services involved 'is not necessary for transferability.'"); *Nunez v. Colvin*, No. CV 13-2131 AGR, 2014 WL 4702508, at *5 (C.D. Cal. Sep. 22, 2014) (rejecting argument that vocational expert must rely on matching work fields and MPSMS codes when analyzing transferability), vacated on other grounds, 673 Fed.Appx. 776 (9th Cir. 2017)

Plaintiff's argument regarding the VE's failure to consult the Department of Labor's Revised Handbook for Analyzing Jobs to determine the relevant work tasks/work fields is equally misplaced. *See Lewis v. Berryhill*, 708 F. App'x 919, 920 (9th Cir. 2018) (holding that SSR 00-4p

does not require the ALJ to inquire into potential conflicts between vocational expert evidence and all possible companion publications to the DOT and noting that there is no legal support for the proposition that an ALJ is required to resolve a conflict between vocational expert evidence and information provided in the Revised Handbook for Analyzing Jobs).

Finally, to the extent that Plaintiff's argument can be framed so as to suggest that the VE's testimony was in conflict with the DOT, this argument is likewise unavailing. An ALJ may not "rely on a vocational expert's testimony regarding the requirements of a particular job without first inquiring whether the testimony conflicts with the [DOT]." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (noting that "SSR 00-4p unambiguously provides that [w]hen a [VE] ... provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that [VE] evidence and the information provided in the [DOT]"). Here, the VE testified that "not every skill set can be encompassed in a ticket or work field or material, product and service. I do believe that based on the overall nature of the work, that proofreading is a viable—even though it might have a different code—[]that's always in the rubric of the creative director." (AR 624.) The ALJ clarified:

> ALJ: So, in other words, the –you don't have to have an identical work field match or a code to feel confident that one can make a transition?
>
> VE: No, you don't, because you gotta think in terms of the real [phonetic] taxonomy from field to project services and work fields in human input. Because you put in a –what somebody thought was an appropriate category, but it's up to the VE to make an educated analysis of whether the – it could also fit into other work fields and materials, products and services.

(*Id.*)

In his decision, the ALJ found that in accordance with SSR 00-04p, the VE's testimony was consistent with the information in the DOT "except regarding certain information related to the claimant's ability to transfer skills which is based on the vocational expert's experience as well as the DOT information." (AR 574.) The ALJ went on to note that the VE testified that while "the workfield categories are not identical as described in the DOT, the proofreader positions cited would be able to be performed 'readily' with little vocational adjustment." (*Id.*) The ALJ

11

permissibly relied on the VE's "extensive vocational experience" to resolve any conflict. *See Zavalin v. Colvin*, 778 F.3d 842, 846 (9th Cir. 2015) (holding that ALJ relies on expertise of vocational experts at step five); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) ("A VE's recognized expertise provides the necessary foundation for his or her testimony.").

The ALJ's reliance on the vocational expert's testimony regarding the transferability of Plaintiff's job skills was supported by substantial evidence. Because this is the only issue raised in Plaintiff's motion for summary judgment, the motion is denied. The Commissioner's cross-motion is granted because Plaintiff has not raised any other claim of error with respect to the ALJ's decision.

## CONCLUSION

For the reasons stated above, Plaintiff's motion for summary judgment is DENIED and the Commissioner's cross-motion is GRANTED.

This Order disposes of Docket Nos. 16 & 20.

**IT IS SO ORDERED.**

Dated: February 26, 2018

JACQUELINE SCOTT CORLEY
United States Magistrate Judge